The judgment is reversed and the cause remanded.

---

## DAVENPORT v. STATE. (No. 8199.)

(Court of Criminal Appeals of Texas. Oct. 15, 1924.)

Criminal law ⬥804(1) — Court's refusal to give written instructions in misdemeanor case held to necessitate reversal.

In prosecution for misdemeanor, court's action in verbally instructing jury over defendant's objection, and in refusing to instruct them in writing, held to require reversal, in view of Code Cr. Proc. arts. 739, 740.

·Appeal from Corporation Court of Port Arthur; A. W. Dycus, Judge.

Evelyn Davenport was convicted of keeping a bawdy house, and she appeals. Reversed and remanded.

Howth & O'Fiel, of Beaumont, Rose & Johnson, of Port Arthur, and Lamar Hart, of Beaumont, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

MORROW, P. J. The conviction is for keeping a bawdy house, a misdemeanor; punishment fixed at a fine of $200.

The court, over the objection of the appellant gave verbal instructions to the jury concerning the law of the case. Appellant prepared written instructions, which the court refused, and reserved bills of exception to the action of the court in verbally instructing the jury and in refusing to instruct them in writing. The statute, articles 739 and 740, C. C. P., require that, when the court gives instructions to the jury, they must be in writing save in a misdemeanor case, when, by consent of the parties, a verbal charge may be given. The refusal to observe this statutory provision, when properly presented for review, has uniformly been held to require a reversal of the judgment. See Melton v. State, 12 Tex. App. 488; Riley v. State, 92 Tex. Cr. R. 237, 243 S. W. 467.

For the reason pointed out, the judgment is reversed and the cause remanded.

---

## MAYNARD v. STATE. (No. 8288.)

(Court of Criminal Appeals of Texas. Oct. 8, 1924.

1. Criminal law ⬥724(1) — Arguments of prosecuting attorney held prejudicial error.

Argument of prosecuting attorney, in which he abused defendant, called him vile names, made statements dehors the record, and drew inferences hurtful to defendant from his objections to cross-examination as to matters not brought out in direct examination, and which were privileged, held prejudicial error.

2. Homicide ⬥300(7)—Instruction in prosecution for assault with intent to murder, based on actual assault not shown by evidence, erroneous.

In prosecution for assault with intent to murder, in which defendant claimed deceased was reaching for a weapon when defendant shot him, instruction based on actual assault not shown was erroneous.

3. Homicide ⬥115—Instruction in prosecution for assault with intent to murder, restricting right of self-defense, held erroneous.

In prosecution for assault with intent to murder, an instruction restricting defendant's right of self-defense to a case where it was necessary to prevent prosecuting witness from killing defendant or inflicting serious bodily harm upon him was erroneous.

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Clarence Maynard was convicted of assault with intent to murder, and he appeals. Reversed and remanded.

B. .D. Dashiell, of Jacksonville, and Norman, Shook & Gibson, of Rusk, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

LATTIMORE, J. Appellant was convicted in the district court of Cherokee county of assault with intent to murder and his punishment fixed at confinement in the penitentiary for a period of three years.

Appellant was charged with the shooting of one Davis who had recently theretofore married a young woman who had been making her home with appellant and his wife. The facts are very conflicting; the theory of the state, supported by the testimony of Davis, the injured party, being that appellant made an unprovoked attempt to take the life of Davis by shooting him with a pistol; the theory for the defense being that Davis was intensely jealous of his wife and had threatened appellant, and on the occasion in question had an iron poker in his hand which was taken from him by his wife, and that shortly after this, the two men being alone in a room, appellant claimed that Davis reached for said poker and, as reviewed from appellant's standpoint, accompanied his acts with a threat to do serious bodily harm to appellant, defending against which threatened danger appellant shot said Davis.

[1] The principal complaints in the instant case are directed at arguments made by the county and district attorneys, and our attention is called to a number of bills of exception presenting these complaints. We have often expressed regret that the state should be put to the expense and delay of reversals of criminal cases because of statements by those representing the state which transcend the bounds of legitimate argument and are deemed hurtful to the interests of the accused. We repeat again that statements of facts by attorneys representing the state, which are not borne out by the record and are harmful, should never be indulged in; nor is it ever proper for abusive language directed toward the accused to be used.

Reverting to the record, we find a bill complaining that the county attorney called appellant a skunk and a villain; another, that he repeatedly called appellant a coward and also a dirty coward; another, that he said, "the demons of hell are going to reorganize and rejuvenate themselves, and put him at their head, and rejoice when he gets to hell, for that's where he is going"; another, that he used the following language: "Judge Marshall (who was district attorney of said district) did not know the defendant, and had no feeling against him, but he (the coun-

ty attorney) was not required by his duty to prosecute the case, but that he did know the defendant and had known him for some years, and that he did have some feeling in the case and prosecuted the defendant because he had known him and knew him to be guilty; that he also knew Mrs. Davis and had known her for some time; and that he would tell the jury there was something dead up the creek."

The harmful effect of these matters appellant sought to have obviated by special charges instructing the jury not to consider such arguments, which were refused.

By other bills of exception it is made to appear that while appellant's wife was giving testimony in his behalf she was insistently asked questions by the state about matters which were privileged between herself and appellant, no reference to which had been made on direct examination. It is further shown that to each of these matters appellant's objections were sustained. Among said inquiries was one asking if appellant did not tell witness when they were lying on the bed together shortly before the shooting that he was going to kill Davis. It is made to appear in another bill that in his argument the county attorney said to the jury, "Believed that the defendant and his wife concocted a scheme while they were lying on the bed before the beginning of the difficulty with the injured party, and planned to kill the injured party and that they were in it together; that defendant told his wife that he was going to kill Davis at that time; and that the inference was justified because the defendant would not let his wife answer when questioned with regard to such matter, and would not answer when questioned himself."

We also learn from the record that Verna Davis, wife of the injured party, made a written statement a few days after the difficulty which was introduced by appellant upon the proposition that said written statement was more favorable to him than the testimony of said witness as given upon the witness stand. We learn from bill of exceptions No. 19, which is approved without qualification, that the following took place:

"Said county attorney in his closing argument did state as a fact to the jury that the statement of the witness Verna Davis, made on the 5th day of April, 1923, was made while she was under the influence of defendant and was procured and taken by a slick or shrewd attorney for the defendant; and that this did and would account for its being more favorable to the defendant than Verna Davis' testimony at the trial.

"There was no evidence as to how the statement was taken nor as to who the statement was taken by, and in truth and in fact the statement was not taken by any of the attorneys representing the defendant in the trial of said cause, and it was not taken by any attorney who had been employed to represent defendant in the case; and defendant interrupted

said statement before it was completed, and objected to same, and, notwithstanding the objection, said statement was made, and the county attorney was permitted to complete it with the apparent sanction of the court."

This same argument was also substantially complained of in another bill as coming from the district attorney.

We hesitate to reverse cases for argument which is merely abusive, however much we may deprecate and criticize same, but, when there appears statements dehors the record such as we have above set out, and then arguments that present to the jury matters hurtful to the accused, predicated upon the mere fact that proper objections were made to illegitimate questions propounded by state's counsel, we do not feel justified in letting a verdict so obtained stand. It is the privilege as well as the duty of counsel representing persons accused of crime to object to improper procedure, and the fact of such objections furnishes no inference of guilt, nor should argument to that effect be indulged. Bill of exceptions No. 16 recites that the county attorney seven or eight times asked appellant's wife on cross-examination about matters which had not been gone into on direct examination, and that in each instance upon objection by appellant the court sustained such objection, but said bill contains the following statement which we must take to be facts, because same is approved by the learned trial judge without qualification:

"And, while the court in each instance sustained the objections of defendant, the manner and method of asking the questions showed that it was the purpose of the county attorney to bring to the attention of the jury the fact that defendant objected to his wife testifying about the matters, and the manner and circumstances and repeated necessity of the court's sustaining of objections of defendant showed the county attorney was doing this deliberately for the purpose of getting such matters before the jury by the questions, with no expectation of the questions being allowed, or answers being required; this was persisted in and continued to such an extent that defendant's attorneys had to remark and appeal to the court, and asked the court to restrain the county attorney, and the court instructed him that he could only ask her about such matters as defendant asked her about."

[2] There was no claim on the part of appellant that an actual assault was made by Davis with any kind of weapon much less one calculated to produce death. Appellant testified that following a threat Davis reached over; and that he thought Davis was reaching for the poker to kill him with and he then shot Davis. An exception was reserved to the court's charge, which was as follows:

"While the law provides that the provocation must arise at the time of the killing, yet in judging of the adequacy of the provocation and the effect of the passion upon the mind of the defendant the past conduct of the deceased or injured party toward the defendant, threats by the deceased or injured party, if any, to take the life of the defendant or do him some serious bodily injury, and all of the facts and circumstances happening at the time of the difficulty and prior thereto may be considered by the jury, and if an assault was made upon the defendant with any weapon that was calculated to produce death or serious bodily injury, and, if one or more of these causes considered together were sufficient to produce a degree of anger, rage, sudden resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection, then the provocation was sufficient and adequate cause existed under the law."

In view of the fact that there was no claim of an actual assault as a basis for appellant's asserted self-defense or aggravated assault, that part of said charge basing the sufficiency or adequacy of the cause upon an actual assault was erroneous.

[3] In the charge on self-defense the right of appellant to shoot was restricted to the proposition that he had said right only in the event it was necessary to prevent Davis from killing him or inflicting serious bodily injury upon him. The language used was as follows:

"If it reasonably appeared to the defendant by the acts of Davis, or by the words, coupled with his acts at the time of such shooting, if any, that it was the purpose and intention of Calvin E. Davis to kill the defendant or inflict on him some serious bodily injury, and if the defendant shot Davis under such circumstances he would be justifiable on the ground of self-defense, and you will find him not guilty of any offense."

There was an exception to this. This court has held that the right of self-defense obtains against any character of unlawful attack, and that in a proper case it is error to restrict the right of self-defense, as was done in this case. The jury may have believed that Davis was about to attack appellant with the poker, or that it so appeared to appellant from his standpoint, and it would seem that he would have the right to defend himself against such unlawful attack, even though he did not believe it would result in the loss of life or serious bodily injury to him. In a proper case the court might be called on to charge on the use of excessive force, but the right of self-defense should not be improperly restricted.

For the errors mentioned, the judgment will be reversed and the cause remanded.